UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO.: 1:09CV-125-M

OHIO RIVER TRADING CO., INC.                                           PLAINTIFF

v.

CSX TRANSPORTATION, INC.                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, CSX Transportation, Inc. ("CSX"), to dismiss [DN 15], a motion by the defendant, CSX, for leave to supplement the record [DN 27], a motion by the plaintiff, Ohio River Trading Co., Inc. ("Ohio River"), to reconsider [DN 12], and a motion by the plaintiff, Ohio River, to show cause [DN 19]. Fully briefed, these motions are ripe for decision.

### I. MOTION TO DISMISS

Ohio River brought this action in the Todd Circuit Court–which was subsequently removed to this Court by CSX–seeking an injunction and damages in connection with a private grade railroad crossing located on property it leases from the Shackelfords in Todd County, Kentucky. CSX has moved to dismiss the claims asserted against it, contending that the allegations in Ohio River's complaint fail to state a claim upon which relief can be granted. Such a defense raised after an answer has been filed and the pleadings have been closed is more appropriately characterized as a motion brought pursuant to Rule 12(c) for judgment on the

pleadings. Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir. 1987) (citing Rule 12(b) & 12(h)(2)). Nevertheless, the same standard applies when reviewing both types of motions. Id. at 11-12; Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

### A. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

When reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the Court must "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accept as true "all well-pleaded material allegations of the pleadings of the opposing party," Fritz, 592 F.3d at 722, and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1950 (2009); Fritz, 592 F.3d at 722. Under this standard, the plaintiff must provide the grounds for its entitlement to relief, Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001), which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949, 1950. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 1950 (internal markings omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## B. FACTUAL ALLEGATIONS

Allegations Not Accepted as True

The Court begins its analysis "by identifying the allegations in the complaint that are" merely conclusions and "not entitled to the assumption of truth." Id. at 1951. In its complaint, Ohio River pleads that a crossing agreement proposed by CSX "contains terms and provisions which . . . are contrary to the public policy of Kentucky . . . ." (Compl. ¶¶ 21, 23.) An assertion by a plaintiff that an agreement is unlawful is a legal conclusion and is not entitled to the assumption of truth. Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 555). Ohio River also pleads that the terms and conditions that CSX seeks to impose are contrary to a prior decision of this Court in Patchwork Green Enters., Inc. v. CSX Transp., Inc., No. 1:96-CV-117-M (W.D. Ky. Sept. 29, 2000). (Compl. ¶ 23.) Again, this is a legal conclusion and the Court does not accept it as true.

Furthermore, the final four paragraphs of Ohio River's complaint contain "bare assertions" which fail to allege facts showing that it is entitled to relief. E.g., Compl. ¶ 26 ("Plaintiff is entitled to a mandatory injunction requiring CSX to complete construction of a widened crossing . . . ."); Id. ¶ 27 ("Plaintiff is entitled to an injunction prohibiting CSX from interfering with Plaintiff's construction of a widened crossing . . . ."); Id. ¶ 28 ("Plaintiff is entitled to recover . . . damages . . . as a result of CSX's failure to negotiate in good faith with Plaintiff, and its interference with the Plaintiff's privileges and rights, in the use of its crossing."); Id. ¶ 29 ("Plaintiff is entitled to use its crossing without the imposition of the terms and conditions that CSX seeks to impose in the crossing agreement.").

### Patchwork Green

Ohio River makes other allegations containing legal conclusions related to the property rights of CSX and Ohio River in this crossing and surrounding property. (See id. ¶¶ 7-10.) The Court will treat these allegations as true as they are consistent with this Court's findings of facts and conclusions of law in Patchwork Green. In Patchwork Green, the then lessee of the property, Patchwork Green, sought a judgment from the Court to preclude CSX from removing the only crossing that allowed Patchwork Green to obtain access to the leased premises from Highway 41–the same crossing in dispute here. Patchwork Green, slip op. at 5-6. Patchwork Green made several arguments in support of its position. Only one was accepted by the Court. The Court concluded that CSX only owned an easement, rather than fee simple title, to the right of way. Id. at 15. As a result the Court held:

> CSX has the right to the reasonable use of its easement -- the right to run its trains along the tracks. As the owner of the fee, Patchwork Green and the Powells have the right to use the crossing for ingress and egress to the golf course without interference from CSX. Therefore, Patchwork Green and the Powells may continue to use the crossing as they have . . . .

Id. at 16.

### Allegations of Fact

In addition to the findings from the Patchwork Green decision, the Court also accepts as true the following pertinent factual allegations contained in Ohio River's complaint. A private crossing exists that allows the Shackelfords–and Ohio River pursuant its lease with the Shackelfords–the ability to access the property in question from U.S. Highway 41. (Id. ¶¶ 5-6.) The property has been used in various ways since the easement was conveyed. It was originally

4

used as farmland and eventually converted into a golf course. (Id.) Now, in order for Ohio River to convert the land into a quarry, which will involve the investment of multiple millions of dollars in its development and operation and provide employment, the private crossing must be widened. (Id. ¶¶ 3-4, 11, 14.)

Approximately one year prior to the institution of this litigation, Ohio River began negotiating with CSX concerning the use and improvement of the crossing and obtained at significant expense the appropriate permits to operate the quarry. (Id. ¶¶ 12-13.) Ohio River also submitted a crossing improvement/widening design to CSX on April 19, 2009, which CSX estimated would cost approximately $25,000 to complete and which Ohio River is willing to pay. (Id. ¶¶ 16-18.) Furthermore, Ohio River is willing to allow CSX's qualified contractors to perform the work so long as the cost of the work is reasonable. (Id. ¶¶ 19-20.) However, before CSX will allow work to be performed on the crossing, it has indicated that Ohio River must enter into a Private Road Grade Crossing Agreement which contains terms that are unacceptable to Ohio River. (Id. ¶ 21.) These terms include, but are not limited to, the requirement that Ohio River assume liability for the negligence of CSX and for any damages or accidents that occur at the crossing which are the fault of CSX. (Id.)

According to Ohio River, CSX refuses to negotiate any further regarding these terms that Ohio River believes are unacceptable, and such failure to negotiate has stifled the development, opening, and operation of the quarry. (Id. ¶¶ 22-24.) As a result, Ohio River has suffered damages that would be difficult to ascertain. (Id. ¶ 25.) Based upon these allegations, the "[p]laintiff prays for judgment against CSX requiring it to commence the construction of a

5

suitable widened crossing to be completed by a date certain, and in the event CSX fails to complete the construction on or before that date, a judgment in [p]laintiff's favor allowing it to hire contractors to build the widened crossing at its own expense. Plaintiff also requests judgment for any damages it suffers due to CSX's [actions] . . . ." (Id. at 5.)

## C. THESE ALLEGATIONS DO NOT STATE A PLAUSIBLE CLAIM FOR RELIEF

Here, the essence of Ohio River's claim is that CSX is interfering with its right to ingress and egress as forbidden by this Court in Patchwork Green. But none of the alleged facts show that CSX has interfered with that right. Instead, the alleged facts only show that CSX is unwilling to further negotiate a widened crossing. The plaintiff would have the Court read the holding of Patchwork Green as not only prohibiting CSX from closing the crossing or taking any other act that physically interferes with the landowner's use of the crossing, but also from imposing an affirmative duty upon CSX to negotiate a widened crossing and construct the widened crossing at the request of the landowners or their lessees. Patchwork Green simply does not stand for that proposition. The complaint contains nothing more than "the-defendant-unlawfully-harmed-me accusation[s]," which are insufficient even under the liberal pleading standard of Rule 8 to state a claim for relief. Iqbal, 129 S. Ct. 1949.

The plaintiff also argues that it is entitled to relief under the common law principles of easements and cites to cases that he claims support its position. In the primary case cited by Ohio River, Tenneco, Inc. v. May, 377 F. Supp. 941 (E.D. Ky. 1974), the issue was whether the owner of the servient estate could build a roadway over a pipeline easement. The Tenneco court answered in the negative. Noting that "the servient holder has no right to use the land subject

6

to the easement in such a manner as to interfere with the reasonable and prudent exercise and enjoyment of the easement by its owner . . . .," the court found that the construction of the roadway unreasonably interfered with the dominant estate because vehicular traffic would require the pipeline to be encased for such traffic. Tenneco, 377 F. Supp. at 943-44. Unlike Ohio River's claim here, which involves CSX's *failure* to take certain actions, Tenneco involved the affirmative actions of the owner of the servient estate that physically interfered with the easement owner's use of the easement.

The plaintiff also cites Commonwealth v. Garner, 896 S.W.2d 10 (Ky. 1995) to support its claim. However, Garner, like Tenneco, is similarly distinguishable. There, the plaintiff sought an injunction to prevent the governmental entity from placing locked gates across roads that allowed him to have access to a cemetery where a family member was buried. Recognizing that an easement holder's rights must be balanced against the rights of the landowner, the Kentucky Supreme Court held that it was reasonable for the governmental entity to place locked gates across the easement so long as the family members of those buried in the cemetery had access to keys to unlock the gates. Garner, 896 S.W.2d at 15. The Court concluded that "[t]here is no reason to believe that the servient owner forfeits his right to protect the land he owns simply because it is crossed by a passway. However, the owner cannot unreasonably interfere with the rights of the holder of the easement." Id. at 14 (citations omitted). Like Tenneco, Garner involved the affirmative actions taken by the landowner that physically interfered with the easement holder's access to the easement.

In City of Williamstown v. Ruby, 336 S.W.2d 544 (Ky. 1960), another case cited by the

7

plaintiff, the landowners granted a city an easement over a fifty-foot strip of land abutting a body of water. Ruby, 336 S.W.2d at 545-46. When the landowners began to operate a commercial fishing dock that competed with the services of the city, the city sought an injunction. In concluding that the trial court properly denied the injunction, the appellate court held that "[t]he easement owner and the landowner have correlative rights which are limited each by the other that there may be a due and reasonable enjoyment of both. The owner of the servient estate has the right to use the land for any purpose which does not interfere with the proper enjoyment of the easement." Id. at 547 (citation omitted).

Here, however, the plaintiff does not seek to preclude CSX from engaging in certain affirmative acts that are interfering with Ohio River's right to ingress and egress. Instead, it suggests that CSX should be required to act for the benefit of Ohio River. Ohio River's argument boils down to this: because it is unable to open its quarry without a widened crossing, and because CSX refuses to further negotiate a widened crossing, then CSX must be in the wrong. However, if CSX is in the wrong, it has not been shown through the allegations contained in the complaint. To be sure, inaction on the part of the servient or dominant estate holder may give rise to a claim for damages if there is an affirmative obligation to act. For instance, the owner of the dominant estate generally has a duty to prevent the easement from falling into disrepair. James W. Ely, Jr. & Jon W. Bruce, The Law of Easements and Licenses in Land § 8:37 (2008) ("the holder of an easement has a duty as well as a right to keep the servitude in repair"). Here, however, the plaintiff contends that Patchwork Green imposes an affirmative obligation on CSX to negotiate and build a widened crossing. It does not.

8

Therefore, having failed to state a claim upon which relief can be granted, dismissal is warranted.

## II. MOTION TO RECONSIDER

In a prior motion, Ohio River sought a preliminary injunction that would require CSX to provide the same injunctive relief that it essentially seeks in its complaint, a widened crossing. As with its complaint, Ohio River argued that CSX was thwarting this Court's Patchwork Green decision by interfering with Ohio River's right to ingress and egress. Ohio River reasoned that "CSX's refusal to negotiate in good faith with the plaintiff and construct an appropriate crossing, at plaintiff's expense, does interfere with that use and threatens to diminish plaintiff's property interest." (Pl.'s Mem. Supp. Mand. Inj. at 3.) Denying Ohio River's motion, the Court found Ohio River's reliance solely upon this Court's Patchwork Green decision was misplaced. Ohio River Trading Co. v. CSX Transp., Inc., No. 1:09CV-125-M, 2009 WL 3856192, at *2 (W.D. Ky. Nov. 17, 2009). "[B]ased only upon the narrow grounds articulated by Ohio River in its motion, the Court [found] that Ohio River ha[d] no likelihood of success on the merits." Id.

In its motion to reconsider, Ohio River contends that the Court improperly construed Ohio River's requested relief. Rather than a preliminary injunction that would require CSX to widen the crossing at CSX's own expense, Ohio River clarifies that CSX should be required to widen the crossing at Ohio River's expense. However, having found that dismissal of Ohio River's complaint is warranted, the plaintiff would be unable to show a likelihood of success on the merits and its motion to reconsider is now moot.

9

### III. MOTION TO SHOW CAUSE

The Court will also deny Ohio River's motion to show cause. Ohio River moved for an order to show cause after CSX "removed" the railroad crossing which is the subject of this lawsuit. Ohio River contends that CSX, by removing the crossing in question, "violated the holding of this Court" in Patchwork Green, (Pl.'s Mot. Show Cause at 1,) and must be made to show cause why it should not be held in contempt. CSX, on the other hand, argues that it has not removed or closed the crossing at issue in this litigation and only conducted repairs that were immediately needed. CSX acknowledges that the crossing is not currently suitable for passage of all vehicular traffic because it has been unable to repave the crossing during the winter months, but will do so as soon as possible. Ohio River insists that this "maintenance" was merely a subterfuge to prevent Ohio River from having access to its quarry.

Generally speaking, a party files a motion to show cause when it believes that an enjoined party is failing to comply with the mandates of a court decree. Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000). The motion must "cite[] the injunctive provision at issue and allege[] that the defendant has refused to obey its mandate." Id. (citing Wyatt v. Rogers, 92 F.3d 1074, 1078 n.8 (11th Cir. 1996)). Here, the plaintiff has failed to identify any injunctive provision that CSX has refused to obey. The plaintiff cites Patchwork Green, but that decision merely granted partial summary judgment in favor of the plaintiffs thereby establishing the rights and duties of the respective parties, but it did not impose an injunction upon CSX. Therefore, if CSX removed the crossing, it may have breached a duty owed to the plaintiff giving rise to a subsequent claim for damages or injunctive relief, but there is no basis for the

Court to hold CSX in contempt absent a violation of a Court order.

## IV. CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that the motion by the defendant, CSX Transportation, Inc., to dismiss [DN 15] is **GRANTED**, and its motion for leave to supplement the record [DN 27] is **DENIED as moot**. The motion by the plaintiff, Ohio River Trading Co., Inc., to reconsider [DN 12] is **DENIED as moot** and its motion to show cause [DN 19] is **DENIED**. A Judgment will be entered accordingly.

cc: Counsel of Record